865 F.2d 1269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ruth A. POLLOCK, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-2225.
 United States Court of Appeals, Sixth Circuit.
 Jan. 4, 1989.
 
 Before KEITH and KRUPANSKY, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Ruth A. Pollock appeals from a district court order affirming the Secretary's determination that she was not disabled and, therefore, not entitled to disability insurance benefits and supplemental security income. For the following reasons, we affirm the district court's judgment.
 
 I.
 
 2
 Pollock filed her applications for disability insurance benefits and supplemental security income on March 24, 1986, alleging a disability onset date of October 21, 1985. The Secretary denied claimant's applications both initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge (ALJ), which was held on November 6, 1986.
 
 
 3
 Pollock testified at the hearing that she was born on August 4, 1948, and was thirty-eight years old. She had completed the tenth grade, and had worked at various factory jobs until October 21, 1985, when she stopped working because of a back problem. Claimant stated that she suffers from idiopathic scoliosis, degenerative arthritis and disc disease, and carpal tunnel syndrome.
 
 
 4
 Upon reviewing the relevant medical evidence and claimant's testimony, the ALJ rendered his decision on December 11, 1986, concluding that Pollock was not entitled to disability insurance benefits and supplemental security income. Initially, the ALJ determined that claimant had not engaged in substantial gainful activity since October 25, 1985. The ALJ found that claimant suffered from a severe impairment diagnosed as idiopathic scoliosis of the spine which has resulted in a left curvature in the thoracic spine and a right curvature of the lumbar spine. The ALJ found, however, that claimant's carpal tunnel syndrome was not severe and did not further reduce claimant's residual functional capacity. Additionally, the ALJ found that claimant did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1. 20 C.F.R. Pt. 404, Subpt. P., App. 1. Further, the ALJ found that claimant was unable to perform her past relevant work as an assembler and packager. The ALJ determined, however, that claimant's allegations of intractable and debilitating pain, which would prevent her from performing even sedentary sit/stand work, was not credible and was not supported by the objective evidence of record. In order to determine whether claimant could perform other work, the ALJ noted that claimant was thirty-eight years old, which meets the definition of a younger individual; that claimant had completed the tenth grade, which constitutes a limited education; that claimant had no transferable work skills; and that claimant had the residual functional capacity to perform a limited range of sedentary work. Using the medical-vocational guidelines as a framework and enlisting the aid of a vocational expert, the ALJ concluded that claimant was not under a disability.
 
 
 5
 Pollock requested review of the ALJ's decision by the Appeals Council, but on March 18, 1987, the Appeals Council found no basis for review. Thus, the ALJ's decision became the final decision of the Secretary.
 
 
 6
 Pollock then filed the present action for judicial review with the district court pursuant to 42 U.S.C. Sec. 405(g). Upon consideration of cross-motions for summary judgment, the district court affirmed the Secretary's decision in an opinion filed November 18, 1987. Claimant brought this timely appeal.
 
 II.
 
 7
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g), which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 8
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Secs. 423(d), 1382c(a)(3). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. Secs. 404.1520(b), 416.920(b). If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled. 20 C.F.R. Secs. 404.1520(c), 416.920(c). Since the ALJ found that Pollock had not worked since 1985 and that she suffered from a severe impairment, further inquiry was necessary. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. Secs. 404.1520(d), 416.920(d). See 20 C.F.R. Secs. 404.1525(a), 416.925(a). If so, benefits are owing without further inquiry. In the instant case, the ALJ found that Pollock did not suffer from one of the listed impairments. In such a case, assuming the individual had previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. Secs. 404.1520(e), 416.920(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a prima facie case of disability. Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978). In the instant case, the ALJ found that Pollock was not capable of returning to her particular occupation.
 
 
 9
 At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. 20 C.F.R. Secs. 404.1520(f)(1), 416.920(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." See 20 C.F.R. Pt. 404, Subpt. P., App. 2. If the characteristics of the claimant do not identically match the description in the grid, however, the grid is used only as a framework or a guide to the disability determination. Kirk, 667 F.2d at 528. In the instant case, the ALJ found that claimant's characteristics did not identically match the description in the grid. Accordingly, the ALJ used the grid only as a guide to the disability determination.
 
 A.
 
 10
 Initially, Pollock argues that the ALJ erroneously relied on the grid in making his disability determination. We reject this argument.
 
 
 11
 Where nonexertional limitations exist, the grid may be used only as a framework for the disability determination. 20 C.F.R., Part 404, Subpt. P., App. 2, Sec. 200.00(e)(2); Kirk, 667 F.2d at 528-29; Crady v. Secretary of Health & Human Servs, 835 F.2d 617, 622 (6th Cir.1987). ALJ's frequently enlist the aid of vocational experts when mechanical application of the grid is prohibited. Cf. Social Security Ruling 83-12 (stating that vocational experts should be consulted to clarify the implications for the occupational base in cases of unusual limitation of ability to sit or stand). That is precisely what the ALJ did in the instant case.
 
 
 12
 Wages v. Secretary of Health & Human Services, 755 F.2d 495 (6th Cir.1985) (per curiam), a case cited by claimant is distinguishable. In Wages, the ALJ relied exclusively on a mechanical application of the grid although the claimant had to be allowed to alternate between sitting and standing for her comfort. Substantial evidence did not support a finding that the claimant could perform a full range of sedentary work, so a mechanical application of the grid was improper. Furthermore, no vocational expert was consulted.
 
 
 13
 By contrast, in the instant case, the grid was not mechanically applied. Furthermore, a vocational expert testified that an individual of claimant's age, education, and work experience who was restricted to sedentary work allowing an alternating sit/stand position would be capable of performing a significant number of unskilled entry level jobs existing in the regional economy. The ALJ relied on the vocational expert's testimony in finding approximately 12,000 jobs in the regional economy which claimant could perform. This finding is supported by substantial evidence.
 
 B.
 
 14
 Claimant next argues that the ALJ erroneously made the finding that her allegations of intractable and debilitating pain were incredible. We reject this argument.
 
 
 15
 With respect to pain, this court has previously held that subjective complaints of pain may support a claim for disability. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986). To support such claim, however, there must be objective medical evidence of an underlying medical condition in the record. Id. at 853. If this requirement is met, the court must also determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce disabling pain. Id.
 
 
 16
 In his findings, the ALJ determined that the medical evidence indicated that Pollock suffered from idiopathic scoliosis. This finding is supported by substantial medical evidence. Thus, Pollock meets the first prong of the Duncan standard, i.e., there is objective medical evidence of an underlying medical condition.
 
 
 17
 The ALJ also found that Pollock's subjective complaints of disabling pain were not supported by objective evidence. This is tantamount to finding that Pollock has failed to meet the second prong of the Duncan standard. We find that substantial evidence in the record supports this finding because neither of the alternative tests of the second prong of the Duncan standard is satisfied. For example, Dr. A.M. Eckhouse, D.O. indicated that claimant retains a reasonably good range of back motion with normal side bending and rotation abilities.
 
 C.
 
 18
 Finally, claimant argues that the Secretary failed to accord enough weight to the medical opinions of her treating physician. We reject this argument. "The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference. This is true, however, only if the treating physician's opinion is based on sufficient medical data." Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985) (citations omitted). Of course, the ultimate determination of disability for the purposes of the Social Security Act is the prerogative of the Secretary, not of the treating physician. 20 C.F.R. Secs. 404.1527, 416.927.
 
 
 19
 In the instant case, Dr. Darrell Porter, M.D. completed a "disability certificate," which states that Ms. Pollock is totally disabled. The certificate is dated January 1, 1986, and it indicates that the estimated length of disability is through January 20, 1986. On January 30, 1986, Dr. Porter completed a second disability certificate which recites: "Condition is permanent. [Patient] has enough symptoms at work to disable." Dr. Porter was apparently referring only to claimant's past work, however, because on that same day his notes read as follows:
 
 
 20
 The patient is doing fairly well as far as her wrists are concerned. She has a little aching discomfort with heavy lifting and a little bit of stiffness. She is advised in stretching and exercises to improve her range of motion and loosen the carpal tunnel. As far as her back is concerned, she is given a note that she has a static problem which is permanent and is unlikely to change in the future, which is severe, idiopathic scoliosis. Apparently at work, this causes her enough significant symptoms that she is unable to tolerate her present job.
 
 
 21
 Additionally, on April 16, 1986, Dr. Porter's notes read as follows:
 
 
 22
 I talked with the patient concerning her disability status. The patient is apparently going to have a job provided to her which would give her minimal stress to her back. She will be evaluated and work restrictions will be considered.
 
 
 23
 The other medical data supplied by Dr. Porter also support the ALJ's finding of no disability under the Social Security Act. For example, on May 1, 1986, Dr. Porter reported:
 
 
 24
 The patient is doing fairly well. She is able to walk about four blocks with only a minimal amount of discomfort. She was encouraged to continue her conservative back care. She is to be on a regular exercise program, as far as walking is concerned, to maintain her muscle tone. She is still on non-steroidal anti-inflammatory medication. She has been placed on Indocin for about one month. After that prescription is finished, I think that she should switch back to the Feldene. She can return for evaluation PRN.
 
 
 25
 For all of the foregoing reasons, the district court's judgment is AFFIRMED.